Guy S. WALKER, Petitioner,

v.

JIM FUOCO MOTOR COMPANY, Colorado Compensation Insurance Authority, and The Industrial Claim Appeals Office of the State of Colorado, Respondents,

and

The Colorado Department of Labor and Employment, Division of Workers' Compensation, and the Director of the Division of Workers' Compensation, Intervenors.

No. 96CA1594.

Colorado Court of Appeals, Div. V.

July 24, 1997.

Norton Frickey & Associates, Dan O. Adkins, Colorado Springs, for Petitioner.

Brandee DeFalco–Galvin, Curt Kriksciun, Denver, for Respondents Jim Fuoco Motor Company and Colorado Compensation Insurance Authority

No Appearance for Industrial Claim Appeals Office

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Laurie Rottersman, Assistant Attorney General, Denver, for Intervenors.

Opinion by Justice QUINN.*

Guy S. Walker (claimant) petitions for review of a final order of the Industrial Claim Appeals Office, which awarded him permanent partial disability benefits based upon a scheduled impairment under § 8–42–107(2)(a), C.R.S. (1996 Cum.Supp.), rather than a whole person impairment under § 8–42–107(8), C.R.S. (1996 Cum.Supp.). He also challenges the constitutionality of § 8–42–107(7)(b), C.R.S. (1996 Cum.Supp.). We affirm the order, and find no constitutional infirmity.

Claimant sustained a shoulder and arm injury while working. The employer, Jim Fuoco Motor Company, and its insurer, Colorado Compensation Insurance Authority, admitted liability for permanent partial disability benefits. The Administrative Law Judge (ALJ) awarded these benefits based upon a 16.25% impairment of the upper extremity. The ALJ reasoned that, since claimant acknowledged that the injury was only to his shoulder, and because no physician had rated claimant with an impairment to the neck, back, or head, claimant's injury was included on the schedule at § 8–42–107(2)(a). The Panel affirmed the award of benefits based on a scheduled injury.

I.

Claimant contends that his injury must be rated as a whole person injury and that benefits must therefore be awarded under § 8–42–107(8). He argues that he is entitled to benefits based on a whole person rating because under the *American Medical Association Guides to the Evaluation of Permanent Impairment* (*AMA Guides*), the shoulder is considered to be a part of the trunk of the body, and because he testified that the pain runs up into his neck. We perceive no error in the award of benefits.

When a claimant's injury is listed on the schedule of disabilities, the award for that injury is limited to a scheduled disability award. Section 8–42–107(1)(a), C.R.S. (1996 Cum.Supp.). In this context, "injury" refers to the situs of the functional impairment, meaning the part of the body that sustained the ultimate loss, and not necessarily the situs of the injury itself. *Strauch v. PSL Swedish Healthcare System*, 917 P.2d 366 (Colo.App.1996). Whether a claimant suf-

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1996 Cum.Supp.)

fered an impairment that can be fully compensated under the schedule of disabilities is a factual question for the ALJ, the determination of which must be upheld if supported by substantial evidence. *Langton v. Rocky Mountain Health Care Corp.*, 937 P.2d 883 (Colo.App.1996).

Section 8–42–107(2)(a) provides the period of compensation for "the loss of an arm at the shoulder." Claimant argues that, under either a dictionary definition or the *AMA Guides*, a 100% loss of the arm would be measured well below the shoulder joint. However, on at least two prior occasions other divisions of this court have rejected the argument that the *AMA Guides* are controlling on the issue of the situs of the functional impairment. *Langton v. Rocky Mountain Health Care Corp.*, supra; *Strauch v. PSL Swedish Healthcare System*, supra.

▮ While the *AMA Guides* are used by physicians in calculating the nature and extent of the medical impairment, *see* § 8–42–101(3.7), C.R.S. (1996 Cum.Supp.), the Guides do not determine the situs of the functional impairment. That question is to be resolved by applying the statutory impairment standards to the facts of the case. *See Langton v. Rocky Mountain Health Care Corp.*, supra.

▮ Here, the ALJ applied the proper legal standard in determining that claimant's impairment was within the scheduled impairment category for "the loss of an arm at the shoulder." Section 8–42–107(2), C.R.S. (1996 Cum.Supp.). The treating physicians found no impairment beyond the shoulder, and also were of the view that the impairment principally affects claimant's arm movements. There thus is substantial evidence to support the ALJ's finding that claimant sustained a functional impairment listed on the schedule of disabilities.

▮ Hence, even though there is other evidence in the record which could support a contrary finding, we have no basis for setting aside the order. *See* § 8–43–308, C.R.S. (1996 Cum.Supp.); *May D & F v. Industrial Claim Appeals Office*, 752 P.2d 589 (Colo. App.1988).

## II.

Claimant's related contention is that, because the ALJ made no findings as to the situs of the functional impairment, the ALJ's findings are insufficient to permit appellate review under § 8–43–308. Again, we disagree.

In concluding that claimant failed to prove that a whole person impairment rating was applicable, the ALJ adopted the physicians' opinions that claimant suffered a loss of range of motion in the upper extremity as a result of the shoulder injury. The loss of range of motion is the functional impairment in this case. Accordingly, this finding is sufficient to permit our review. *See Riddle v. Ampex Corp.*, 839 P.2d 489 (Colo.App. 1992) (ALJ is not held to crystalline standard in articulating administrative order).

## III.

Claimant also contends that the phrase "partial loss of use of any member" in § 8–42–107(7)(b) is void for vagueness and therefore deprives him of due process. We disagree.

When an injury causes a "partial loss of use of any member" specified in the schedule, the amount of permanent partial disability benefits is apportioned accordingly. Section 8–42–107(7)(b). Claimant argues that because "loss of use" could encompass a broad range of conditions, including loss of strength, manual dexterity, sensation, or range of motion, it is vague because one must guess at its meaning.

▮ However, the fact that there may be many examples of "loss of use" does not equate to unconstitutional vagueness. The statute must necessarily be phrased in general terms in order to ensure applicability to varied circumstances. Since a number of different and diverse factors may be involved in assessing each application of a statute, adopting fixed criteria is sometimes difficult. Fundamental fairness does not require a statute to enumerate examples or criteria in every instance. *Warren v. Southern Colorado Excavators*, 862 P.2d 966 (Colo.App.1993).

■ We conclude that "loss of use" is sufficiently precise to permit persons of common intelligence to understand its meaning. *See Watso v. Colorado Department of Social Services,* 841 P.2d 299 (Colo.1992) (setting forth the void for vagueness test). Hence, we perceive no constitutional violation, especially since the *AMA Guides* may be used to assist in understanding "loss of use." *See Strauch v. PSL Swedish Healthcare System, supra* (although physician's rating of physical impairment under the *AMA Guides* is distinct from ALJ's determination whether a claimant has suffered a scheduled impairment, the rating based on the *AMA Guides* may be considered by the ALJ when making that determination).

The order of the Panel is affirmed.

RULAND, J., and ERICKSON,* Justice, concur.